IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

WARDELE JAMES MAYES,

     Plaintiff,

v.                             CASE NO. 1:17-cv-38-MW-GRJ

NANCY BERRYHILL,
Acting Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for Supplemental Security Income (SSI) pursuant to Title XVI of

the Social Security Act (the Act).  ECF No. 1.  The Commissioner has

answered, and both parties have filed briefs outlining their respective

positions.  ECF Nos. 8, 14, 15.  For the reasons discussed below, it is

respectfully recommended that the Commissioner's decision be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits on October 2, 2012,

alleging disability commencing on February 26, 2011.  His claim was

denied initially and upon reconsideration.  At Plaintiff's request, a hearing

was held before an Administrative Law Judge ("ALJ") on April 7, 2015, at
which Plaintiff and a vocational expert (VE) testified.  R. 30-51.  The ALJ
issued an unfavorable decision on September 22, 2015, and on December
22, 2016, the Appeals Council denied review.  R.  1-4, 12-24.

This appeal followed.  The sole issue presented is whether the ALJ
should have found Plaintiff disabled at Step Five because it is credible that
a person with Plaintiff's mental impairments and lack of vocational history
would not "suddenly" be able to maintain full-time employment.  ECF No.
14 at 28.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by
substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the
evidence must do more than merely create a suspicion of the existence of
a fact, and must include such relevant evidence as a reasonable person
would accept as adequate to support the conclusion.[2]

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v.
Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389,
401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d
580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity (SGA) by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be

---

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

expected to last for a continuous period of not less than twelve months.[6]
The impairment must be severe, making Plaintiff unable to do his previous
work, or any other substantial gainful activity which exists in the national
economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]
First, if a claimant is working at a substantial gainful activity, he is not
disabled.[9]  Second, if a claimant does not have any impairment or
combination of impairments which significantly limit his physical or mental
ability to do basic work activities, then he does not have a severe
impairment and is not disabled.[10]  Third, if a claimant's impairments meet
or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix
1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further
references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the
existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936
F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's

impairments (considering his residual functional capacity ("RFC"), age,

education, and past work) prevent him from doing other work that exists in

the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past

relevant work initially lies with the plaintiff.[14]  The burden then temporarily

shifts to the Commissioner to demonstrate that "other work" which the

claimant can perform currently exists in the national economy.[15]  The

Commissioner may satisfy this burden by pointing to the Medical-

Vocational Guidelines (the "Grids") for a conclusive determination that a

_____

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.
3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such

---

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

evidence.[20]  Only after the Commissioner meets this burden does the

burden shift back to the claimant to show that he or she is not capable of

performing the "other work" as set forth by the Commissioner.

## III.  <u>SUMMARY OF THE RECORD</u>

### *A.  ALJ's Decision*

The ALJ determined that Plaintiff has the severe impairments of:

hypertension, obesity, affective disorder, anxiety related disorder,

borderline intellectual functioning, schizoaffective disorder, and alcohol use

disorder.  Plaintiff does not have an impairment or combination of

impairments that meets or equals the listings.  The ALJ determined that

Plaintiff has the RFC for light work, with additional exertional limitations and

with limitations to account for his mental impairments, including only

occasional collaboration with coworkers and supervisors, in a job with

simple routine tasks that require no independent goal-setting judgments,

and in a work environment with only occasional changes.  After discussing

the relevant evidence, the ALJ concluded that Plaintiff's subjective

complaints regarding the limiting effects of his impairments were not

---

[20] *See id.*

entirely credible.

Plaintiff had no past relevant work.  Based upon the testimony of a

VE, the ALJ determined that in view of Plaintiff's age, education, work

experience, and RFC, there are jobs that exist in significant numbers in the

national economy that Plaintiff can perform, such as housekeeping

cleaner, marker, and photocopying-machine operator.  The ALJ therefore

found that Plaintiff was not disabled.  R. 12-24.

### B. *Medical and Opinion Evidence*

Plaintiff's argument on appeal focuses on asserted limitations

stemming from his mental impairments.  *See* ECF No. 14 at 28 (citing

Plaintiff's combination of mental health impairments and lack of vocational

history as grounds for reversing the ALJ's decision).  The evidence that is

relevant to Plaintiff's argument may be summarized as follows.

Plaintiff's records reflect that he was diagnosed with chronic

schizophreniform disorder in November 2011.  *See* R. 444.

Plaintiff underwent a mental status examination at Meridian

Behavioral Healthcare following his release from jail in August 2012.  R.

278-79.  The examination findings were normal.  Plaintiff was continued on

medication for depression and anxiety.  *Id.*

Alachua County Health Department (ACHD) records from May 2013 reflect that Plaintiff had a normal mood and normal affect, mild anxiousness, and he denied suicidal ideation and hallucinations.  R. 303-04, 312.  Plaintiff reported auditory hallucinations in July 2013, but he had stopped taking his medication.  He was provided with counseling, including to increase his awareness of the value of proper use of medications.  R. 444.  In August 2013, it was noted that Plaintiff was still off of his medications and planned to return to Meridian for treatment.  R. 450.

Progress notes from the Helping Hands Clinic in January 2015 reflect that Plaintiff "has admitted his schizophrenia & bipolar but has remarkable control at this time."  R. 465.

Ronald Wohl, MSN, ARNP, completed a clinical assessment of pain in March 2015, opining that Plaintiff had "a diagnosed psychosis and is therefore subject to magical thinking and an irrational paradigm."  Wohl assessed Plaintiff with "marked" and "extreme" mental functional limitations. Wohl noted, however, that in the years he had been treating Plaintiff he had become "much more compliant and has learned to control

his fear and anxiety very well," but that Plaintiff's condition "could deteriorate tomorrow and his sever social dysfunction would return quickly." R. 472-76. Although Wohl was not an acceptable medical source, the ALJ considered this opinion and afforded it little weight because it was inconsistent with the other medical evidence and opinions of record. R. 21.

Reviewing state agency psychologists opined that Plaintiff had no more than mild to moderate functional difficulties stemming from his mental impairments. *Id*., *see* R. 64-72, 86-88.

In June 2015, Plaintiff underwent a consultative examination with Diana Benton, Psy.D., at the request of the ALJ. R. 481-87. Plaintiff was cooperative, and reported that he had taken psychotropic medication since 2004. His current medications included Risperdal, Hydroxyzine Pamoate, and Trazodone. Plaintiff reported that the medication was helpful. Specifically, he stated "[a]s long as I take my medicine I'm OK. I hear the voices, but they [are] not as constant. They [are] not as agitating as they normally would be." R. 482.

Plaintiff reported that mental health counseling from 2004-10 and

2012-15 was helpful to him.  He told Dr. Benton that he was capable of performing all necessary self-care ADL's including, bathing, dressing, and eating.  He also related that he can cook with a microwave oven and perform household cleaning, shop for groceries, and manage finances.  He stated that his social activities include seeing his girlfriend almost every day, going to the library, the park and McDonald's with her, and seeing his son and daughter several times a week.  Plaintiff told Dr. Benton that he attends church two or three times per month, and sometimes socializes at the Elks Club.  *Id*.

Dr. Benton performed IQ testing and determined that Plaintiff had a full scale IQ of 79.  He did not appear to have significant difficulty with memory.  Plaintiff reported that if he gets enough sleep he can see things that happen in the future, and he endorsed auditory hallucinations.  *Id*.

Dr. Benton observed that Plaintiff's mood was euthymic with congruent affect.  He denied suicidal and homicidal ideation, and immediate, recent, and remote memory were intact.  Plaintiff was able to name the current U.S. president, several past U.S. presidents, oceans, and the capital of Florida.  He performed serial sevens subtraction with three of

five correct, mental addition of double digit numbers, and simple multiplication.  *Id.*

Dr. Benton assessed Plaintiff with schizoaffective disorder and alcohol use disorder.  She opined that Plaintiff "currently appears to be stable on medication.  However, due to the fluctuating nature of some of his mental health symptoms he may have difficulty sustaining social interaction, concentration and persistence over the course of long term employment.  *Id.*

In her Medical Source Statement, Dr. Benton opined that Plaintiff had moderate limitations in the ability to understand, remember, and carry out complex instructions and in the ability to make judgments on complex work-related decisions.  In other functional areas, Plaintiff had only mild limitations.  R. 478-80.

The ALJ afforded great weight to Dr. Benton's assessment of Plaintiff's mental functional abilities because she had the opportunity to examine Plaintiff and her opinion was consistent with the record as a whole, including Plaintiff's own description of his ADL's.  The ALJ observed that Plaintiff's ACHD and Shands/UF  records reflect that on multiple

occasions his mood and affect were appropriate to the situation.  R. 19-20;
*see* R. 345, 357, 362, 395, 439, 443, 450.

### B.  *Hearing Testimony*

Plaintiff was 47 years old at the time of the administrative hearing.
Plaintiff attended school through ninth grade and took a vocational class in
culinary arts while incarcerated.  Plaintiff attained his GED in 1989.  R. 32-
33.

With regard to his lack of significant work history, Plaintiff testified
that he survives by living with his family.  His household responsibilities
include washing dishes and taking out the trash.  In a typical day he
watches TV, sits outside, or goes with his father to see family.  He talks to
friends on the phone.  Plaintiff attends the Helping Hands Clinic every
three months for medication management.  R. 34-35.  Plaintiff spends time
with his girlfriend, who comes over to his house for conversation and sex.
R. 37.  He attends church with his father, and reads the bible with his
girlfriend.  *Id*. at 39-40.

Plaintiff testified that the last time he tried to work was in 2008, at a
fast-food restaurant.  His toenails came off, his body ached, and he could

not remember instructions. Plaintiff was terminated because he could not remember what to do. *Id*. at 35-36.

Plaintiff testified that his family told him to get help at Meridian because he was cutting himself and hearing voices. He became angry with people. He feels depressed and does not want to be around anyone. He has difficulty focusing. *Id*. at 42-44.

The ALJ posed a hypothetical to the VE that assumed a person with no past relevant work, a high school equivalency education, and with the RFC for light work with no climbing or exposure to hazards, no exposure to the general public and only occasional collaboration with coworkers and supervisors, in a job with simple, routine tasks that requires no independent goal-setting judgments. The ALJ identified the available jobs of housekeeping cleaner, marker, and photocopying-machine operator. R. 47-49.

## IV. <u>DISCUSSION</u>

Plaintiff argues that the ALJ should have found Plaintiff disabled at Step 5 because it is "entirely credible" that as a result of Plaintiff's mental health impairments and lack of vocational history he would not "suddenly

be able to maintain full-time employment."  ECF No. 14 at 28.  Plaintiff also suggests that the ALJ erred in his credibility assessment by citing Plaintiff's lack of significant work history.  *Id*. at 29.

At Step Five, the burden temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.  *Doughty*, 245 F.3d at 1278 n.2.  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled. *Walker*, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

Where, however, a claimant's RFC precludes him from performing a full range of work at a particular exertional level, or if the claimant is subject to nonexertional limitations, the ALJ may seek expert vocational testimony. *Foote*, 67 F.3d at 1559; *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones*, 190 F.3d at 1229 (citing *McSwain v.*

*Bowen*, 814 F.2d 617, 619–20 (11th Cir. 1987)). At step five, "only an

ability to do full-time work will permit the ALJ to render a decision of not

disabled." *Kelley v. Apfel*, 185 F.3d 1211, 1214–15 (11th Cir. 1999) (citing

SSR 96-8p).

Substantial evidence supports the ALJ's determination that jobs exist

in significant numbers in the national economy that Plaintiff can perform. In

this case, because Plaintiff's ability to perform all or substantially all of the

requirements of light work was reduced by his nonexertional impairments,

the ALJ utilized a VE to determine whether jobs exist in the national

economy for an individual with Plaintiff's age, education, work experience,

and RFC.  The VE testified that a claimant with this profile could perform

work as a housekeeping cleaner, marker, and photocopying-machine

operator, all of which are jobs that exist in significant numbers in the

national economy.  R. 47-48.  The ALJ posed a proper hypothetical to the

VE and the ALJ properly relied on the VE's testimony as substantial

evidence.

Plaintiff argues that he has never been employed at the level of SGA,

and that "no reasonable person could conclude that Plaintiff has the ability

to work" without unacceptable absences due to his mental impairments. ECF No. 14 at 28-29.  It is the Plaintiff's burden to prove inability to perform the suggested jobs, and Plaintiff offers only conclusional assertions in support of his argument.  *See Williams v. Barnhart*, 140 Fed. Appx. 932 (11th Cir. 2005).

In determining that Plaintiff retained the RFC for a reduced range of full-time light work, the ALJ pointed to substantial evidence in the record. The ALJ observed that Plaintiff's medical records, as summarized above, did not reflect the type of medical treatment that would be expected for a disabled individual, and Plaintiff's ADL's were not as limited as would be expected.  As summarized above, Plaintiff maintains active social relationships, is able to perform all self-care ADL's, and performs some household chores.  *See* R. 21.

The ALJ also pointed to Dr. Benton's consultative assessment, in which she concluded that Plaintiff had only moderate limitations in four functional areas, and that her ratings would remain valid as long as Plaintiff remained stable on his medication.  R. 19.  Plaintiff himself stated that he benefitted from mental health counseling and remained stable on

medication.  R. 34-35; 482.

The ALJ also pointed to Plaintiff's lack of significant work history as a basis for questioning his credibility regarding whether his continuing unemployment is actually due to medical impairments.  R. 21.  Contrary to Plaintiff's suggestion, a poor work history may be deemed reflective of possible secondary-motivational issues, and it is Plaintiff's burden to provide explanation or supporting evidence regarding gaps in work history. *Pennington v. Comm'r Soc. Sec.*, 652 Fed. Appx. 862, 872 (11th Cir. 2016). In this case, Plaintiff testified at the hearing that his inability to continue working was primarily due to physical impairments, including problems with his toenails and body aches.  R. 35.  Plaintiff further testified that he had difficulty remembering instructions, but the medical evidence does not establish disabling memory difficulties and Dr. Benton specifically found after testing that Plaintiff's memory "does not appear to be a significant area of difficulty for him."  R. 486.

In sum, on this record, the undersigned concludes that the ALJ's finding at Step Five is supported by substantial evidence.

## V.  CONCLUSION

It is respectfully **RECOMMENDED** that the decision of the

Commissioner should be **AFFIRMED**.

     **IN CHAMBERS** this 31st day of October 2017.

                *s/ Gary R. Jones*
                GARY R. JONES
                United States Magistrate Judge

<u>**NOTICE TO THE PARTIES**</u>

     **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.